UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

STEPHANIE CAROL HENLEY,         )
                                )
         Plaintiff,             )
                                )
    v.                          )   Case No. 4:08CV00495 FRB
                                )
WAL-MART STORES EAST, LP,       )
                                )
         Defendant.             )

**MEMORANDUM**

Presently pending before the Court is Defendant Wal-Mart Stores East, LP's Verified Motion To Enforce Settlement Or In The Alternative Motion To Dismiss. (Docket No. 33/filed July 29, 2009). All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).

**I.   Background**

   A.   Documentary Evidence

Documents filed in support of the instant motion establish the following. On February 21, 2008, Mr. James Eason and Mr. Peter Van Leunen, attorneys with the law firm Eason & Van Launen, L.L.C., filed a Petition in Missouri state court on behalf of plaintiff Stephanie Carol Henley (also "plaintiff"), who was, at that time, their client. In that Petition, plaintiff alleged that, on March 31, 2007, she sustained personal injury after falling while on the premises of defendant Wal-Mart Stores East, LP (also "Wal-Mart" or "defendant"). (Docket No. 2, Attachment 1, pages 1-

-1-

3). On April 14, 2008, defendant removed the action to this Court on the basis of diversity jurisdiction. (Docket No. 2).

On July 16, 2009, plaintiff executed a "Settlement Authority Agreement." (Docket No. 33, Exhibit B, page 4). The document bears the signatures of both plaintiff and Mr. Eason. The text of the document is as follows:

July 16, 2009

SETTLEMENT AUTHORITY AGREEMENT

**RE:** Stephanie Henley v. Wal-Mart

> I, Stephanie Henley, do hereby give the firm of Eason & Van Leunen, LLC, the authority to settle the above-referenced matter for a minimum of $5,000. I do so being fully advised by Eason & Van Leunen, LLC of the legal ramifications of granting such authority. I further understand that based upon my pre-litigation loan with Preferred Capital Lending that I may not receive any settlement proceeds from the above referenced cause of action. I sign this agreement under my own free will.

(Id.)

On July 21, 2009, counsel for defendant wrote to Mr. Eason, confirming that plaintiff's claim against Wal-Mart had been resolved for $7,500.00, and a dismissal with prejudice at each party's own costs. (Docket No. 33, Exhibit A). The letter indicated the enclosure of the original and copies of the Release, Settlement, Indemnity and Confidentiality Agreement and Stipulation for Dismissal for signature by plaintiff and her counsel. (Id.)

On July 24, 2009, plaintiff terminated her representation by counsel, citing "conflicts of interest." (Docket No. 33,

-2-

Exhibit B, at page 3). On that same date, Mr. Van Leunen sent electronic correspondence to defendant Wal-Mart's counsel advising of the termination, and placing a lien for fees and costs totaling $3,512.34. (Id. at 2).

B. Hearing Testimony

On September 25, 2009, a hearing was held before the undersigned on the instant motion. During the hearing, Mr. Eason and plaintiff both testified.[1]

During Mr. Eason's testimony, he testified that he and Mr. Van Leunen filed plaintiff's personal injury case on her behalf, and then began investigating the case and conducting discovery. Mr. Eason testified that the discovery process involved several depositions, including the deposition of plaintiff's treating orthopedic surgeon, and the depositions of a paramedic and of a Wal-Mart security guard who testified they were on the scene shortly following plaintiff's fall. He testified that, earlier in the case, he made large settlement demands, including demands of $95,000.00 and $30,000.00, but that Wal-Mart rejected them. He testified that, as the discovery process unfolded, it became apparent that plaintiff would likely not prevail at trial, and that settlement should be pursued at a reduced amount. More specifically, Mr. Eason testified that he developed concerns about

---

[1] At the outset of the hearing, the Court advised plaintiff that her communications with her attorneys were protected by the Attorney-Client Privilege. The Court advised plaintiff that, by raising the issues of what was said during such communications, she would be waiving that privilege, and that her attorney would be called to the stand and would testify about those communications. The Court then asked plaintiff whether she wished to proceed. Plaintiff testified that she understood, and wished to waive the Attorney-Client Privilege.

-3-

the mechanism of injury following the deposition of plaintiff's orthopedic surgeon, and developed concerns with respect to liability following the June, 2009 depositions of the paramedic and security guard.

Mr. Eason testified that, following the aforementioned June 2009 depositions, Wal-Mart offered $5,000.00 in settlement. At that point, plaintiff was contacted, and she came to the office on July 16, 2009 to discuss the case, and ultimately executed the aforementioned Settlement Authority Agreement. Mr. Eason testified that he recommended to plaintiff that, if $5,000.00 was Wal-Mart's final offer she should accept it, but that he would contact Wal-Mart's attorney and negotiate for a higher amount. Mr. Eason testified that plaintiff was advised that negotiations were underway with Wal-Mart's counsel, and that settlement was the goal of such negotiations. He testified that he and defense counsel negotiated back and forth, and ultimately settled on a final settlement amount of $7,500.00. Mr. Eason testified that the Release, Settlement, Indemnity and Confidentiality Agreement (Docket No. 33, Exhibit C) accurately memorialized the settlement agreement he negotiated with Wal-Mart's counsel.

Mr. Eason testified that he recalled his conversations with plaintiff, and that neither he nor Mr. Van Leunen ever engaged in any sort of verbal attacks upon plaintiff. Mr. Eason testified that he and Mr. Van Leunen gave plaintiff their candid evaluation of the case, which was based upon their evaluation of the case itself, their litigation experience, their opinions regarding

-4-

plaintiff's ability to endure trial, and the state of the applicable law at the time. Mr. Eason testified that they told plaintiff that she would likely not prevail at trial, and that $7,500.00 was a fair settlement.

Ms. Henley testified that she signed the July 16, 2009 Settlement Authority Agreement. She testified that, on July 9, 2009, Mr. Van Leunen called her and said that, due to the revelations during the depositions of the paramedic and security guard, that Wal-Mart would offer $5,000.00. Ms. Henley testified that Mr. Van Leunen said that he would file "a motion" for counteroffer of $30,000.00 with this Court to cover medical expenses, and pain and suffering. She testified that, when she visited the office on July 16, 2009, she believed that such counteroffer would be in place. Ms. Henley testified that her attorneys were frustrated with the case in general, and told her that they were not interested in taking the case to trial. She testified that she wondered why her attorneys did not notify her about these issues earlier.

Ms. Henley testified that she waited, but never heard back from Mr. Van Leunen about the $30,000.00 counteroffer. She testified that she wondered why her attorneys conferred with Wal-Mart's counsel outside of her presence, and that she wondered why she could not be present during those talks because it was her case.

On cross-examination by Wal-Mart's counsel, Ms. Henley testified that she gave her attorneys authority to settle her case

for a minimum of $5,000.00, and that she was aware of Wal-Mart's offer in that amount. She identified the Settlement Authority Agreement in Court, and identified her signature thereon. Ms. Henley testified that she did not read the document thoroughly before signing it, but also testified that she did give her attorneys authority to settle her case for a minimum of $5,000.00, and that she understood that, if her case was settled, she would be unable to pursue Wal-Mart for more money than was agreed upon as settlement. She also testified that she was advised during the final negotiation process, and was told that her case would probably settle within a range of $9,900.00 and $5,000.00. She testified that she received a voice mail from her attorneys that Wal-Mart had agreed to a $7,500.00 settlement. Ms. Henley testified that, before the foregoing events, she took out a pre-litigation loan of $4,000.00 plus interest with Preferred Capital Lending.

    C.    <u>Arguments of the Parties</u>

In support of the instant motion, defendant argues that plaintiff's attorneys had not only apparent and presumed authority to enter into the settlement agreement on plaintiff's behalf, but that they also had actual and express authority, by virtue of the July 16, 2009 Settlement Authority Agreement, to settle plaintiff's claims for a minimum of $5,000.00. Defendant further argues that plaintiff's attorneys' actions were consistent with that express authority, inasmuch as they negotiated settlement of plaintiff's claims for an amount exceeding that minimum. Defendant also argues

that there was no aspect of the settlement agreement which would have given defendant reason to question whether plaintiff's counsel did in fact have the authority to resolve plaintiff's claim for the agreed-upon amount.

Plaintiff submitted to this Court a timely response to the instant Motion. Therein, she detailed many medical, psychological, and personal problems that would likely have been the subject of her testimony had her case against Wal-Mart proceeded to trial. Plaintiff also argued that she signed the July 16, 2009 Settlement Authority Agreement under emotional distress, and states that, at previous meetings with Messrs. Eason and Van Leunen, she endured verbal abuse and "was just physically and mentally exhausted." Id. at 3. Plaintiff also submits that "[m]y attorneys led me to believe that the settlement agreement for $5,000.00 would be dismiss due to prejudice of pain and suffering and medical expenses," [sic] and that her attorneys verbally told her that they planned to submit "a counteroffer for [plaintiff's] pain and suffering which is considered compensatory damages for ($95,000 to $30,000)." (Id.)

**II. Discussion**

Because this matter is before this Court pursuant to diversity jurisdiction, this Court must apply Missouri's substantive law, and federal procedural law. Erie R. Co. v. Tompkins, 304 U.S. 64 (1938) (federal court sitting in diversity must apply the forum state's substantive law, and federal procedural law); see also Winthrop Resources Corp. v. Stanley

-7-

Works, 259 F.3d 901, 904 (8th Cir. 2001). The parties herein do not contest the applicability of Missouri law, and the undersigned therefore assumes that Missouri law controls. Bath Junkie Branson, L.L.C. v. Bath Junkie, Inc., 528 F.3d 556, 561 (8th Cir. 2008) (internal citation omitted)(assuming that Missouri law controls where both parties relied on Missouri law).

In Missouri, a party seeking specific performance of a settlement agreement bears the burden of demonstrating the existence of the agreement by clear, convincing and satisfactory evidence. Vulgamott v. Perry, 154 S.W.3d 382, 388 (Mo.Ct.App. 2004); B-Mall Co. v. Williamson, 977 S.W.2d 74, 77 (Mo.Ct.App. 1998). Settlement agreements are governed by the law of contracts, Kenney v. Vansittert, 277 S.W.3d 713, 722 (Mo.Ct.App. 2008), and the essential elements of a contract (offer, acceptance and consideration) must therefore be proved. Ste. Genevieve County Levee Dist. #2 v. Luhr Bros., Inc., 288 S.W.3d 779, 783 (Mo.Ct.App. 2009). The absence of a signed agreement, in itself, does not imply that no agreement was reached. Visiting Nurse Ass'n, St. Louis v. VNA Health Care, Inc., 347 F.3d 1052, 1054 (8th Cir. 2003). When the Court determines that a valid settlement agreement exists, the Court may order the parties to execute a settlement release as a species of specific performance. Kenney, 277 S.W.3d at 722.

As defendant correctly notes, in Missouri, a party contending that her attorney lacked the authority to bind her in settlement carries a heavy burden. Bishop v. Heartland Chevrolet,

-8-

Inc., 152 S.W.3d 893, 896 n. 4 (Mo.Ct.App. 2005).  In Glass v. Kirkland, 29 F.3d 1266, 1269 (8th Cir. 1994), the Eighth Circuit, interpreting Missouri law, recognized that although an attorney's authority to settle a client's case does not arise by the mere fact of his employment, "an attorney is presumed to have the authority to settle a case if the attorney expressly states that he has such authority or negotiates as though he does."  Id. at 1269 (citing Barton v. Snellson, 735 S.W.2d 160, 163 (Mo. Ct. App. 1987) and Leffler v. Bi-State Dev. Agency, 612 S.W.2d 835, 837 (Mo. Ct. App. 1981)); see also Kenney, 277 S.W.3d at 721 ("authority is presumed to be present in the client's attorney of record and where the attorney undertakes negotiations with the opposing party.")  When an attorney has even the apparent authority to settle his client's claim, that settlement will be binding upon the client unless it is so unfair as to raise questions regarding the authority, or to imply fraud.  Kenney, 277 S.W.3d at 721; see also Promotional Consultants, Inc. v. Logsdon, 25 S.W.3d 501, 505 (Mo. Ct. App. 2000) (citing Wenneker v. Frager, 448 S.W.2d 932, 937 (Mo. Ct. App. 1969)).

In the case at bar, it is clear, based upon the documentary evidence and the testimony of Mr. Eason and of plaintiff herself, that plaintiff expressly authorized Messrs. Eason and Van Leunen to settle her claims against Wal-Mart for a minimum of $5,000.00, as specified in the Settlement Authority Agreement executed by plaintiff on July 16, 2009. (Docket No. 33, Exhibit B, page 4).  It is also clear, based upon plaintiff's

-9-

testimony and her signature on the Settlement Authority Agreement, that she understood that she was granting settlement authority, and that the settlement would conclude her case against Wal-Mart. The undersigned therefore concludes that Messrs. Eason and Van Leunen had actual and express authority to settle plaintiff's case against Wal-Mart.

It is also clear, based upon the correspondence between counsel for Wal-Mart and plaintiff's former attorneys, and from the hearing testimony of plaintiff and Mr. Eason, that the conduct of plaintiff's former attorneys led Wal-Mart's counsel to believe that they were authorized to settle the dispute on plaintiff's behalf, and that they indeed reached a settlement with Wal-Mart that was consistent with the authority Ms. Henley granted in the Settlement Authority Agreement. It cannot be said that Messrs. Eason and Van Leunen's conduct put counsel for Wal-Mart on inquiry as to their authority, or that the evidence of record fails to establish the existence of authority. See Kenney, 277 S.W.3d at 721. The undersigned therefore determines that Messrs. Eason and Van Leunen also had apparent authority to settle plaintiff's claim against Wal-Mart.

As noted above, where the attorney has the authority to settle his client's claim, the settlement will be binding upon the client unless it is so unfair as to raise questions regarding such authority, or to imply fraud. Id. at 721. In the case at bar, no such questions are raised, nor is fraud apparent. While plaintiff, in her response to the instant motion, claims that her attorneys

were verbally abusive to her and that she signed the settlement agreement under duress, the credible testimony at the hearing on the motion does not support such claims. Plaintiff testified that, when she met with her attorneys on July 16, she was upset, and her attorneys were frustrated with the case in general. She also testified that her attorneys told her that they were not interested in taking her case to trial. Consistent with this, Mr. Eason testified that, while the initial settlement demands he presented to Wal-Mart reflected his assessment of the case at a high dollar value, his assessment of the case's value diminished greatly following discovery, and he so advised Ms. Henley. He also testified that he and Mr. Van Leunen based their assessment of the value of Ms. Henley's case on, <u>inter</u> <u>alia</u>, their actual investigation of the case, and the evidence yielded via discovery. Indeed, it is understandable that plaintiff and her counsel would have been upset on July 16, considering that recent discovery had dashed their initial hopes that the case had great value. It is also apparent, from plaintiff's hearing testimony, that she took offense when her attorneys conducted settlement negotiations with defendant's counsel outside of her presence. The fact that the parties were upset on July 16, and the fact that plaintiff was offended, however, do not yield the conclusion that plaintiff signed the Settlement Authority Agreement under duress. Credible evidence adduced at the hearing does not support the claim that Messrs. Eason and Van Leunen placed plaintiff under duress at any time. During his sworn testimony, Mr. Eason denied that he or Mr.

Van Leunen ever subjected plaintiff to any sort of abuse, and his testimony was credible.

Plaintiff's claims and testimony were equivocal, and in some respects self contradictory and inconsistent. Plaintiff testified that she signed the Settlement Authority Agreement with the knowledge that she was agreeing to settle her case for a minimum of $5,000.00, and that settlement would conclude her case against Wal-Mart. Plaintiff's contentions that she thought her attorneys were "filing a motion for counteroffer" with this Court, or that they planned to settle her case as per the Settlement Authority Agreement while simultaneously seeking $30,000.00, $95,000.00, or other additional money, are inconsistent with that testimony, and are neither credible nor compelling. Neither the documentary evidence, nor the hearing testimony, support the conclusion that plaintiff was under duress when she signed the Settlement Authority Agreement; that she failed to comprehend the settlement authority she was granting; or that she failed to comprehend what settlement meant for the future of her case against Wal-Mart.

The documentary evidence, and the credible hearing testimony supports the conclusion that plaintiff freely gave her attorneys settlement authority, and that her attorneys committed no wrongdoing in either procuring such authority or in settling her case. It is also apparent that plaintiff's attorneys settled her case against Wal-Mart in a manner consistent with the settlement authority plaintiff gave them. The settlement reached between

plaintiff's former attorneys and counsel for Wal-Mart, which Mr. Eason testified was memorialized in the Release, Settlement, Indemnity and Confidentiality Agreement (Docket No. 33, Exhibit C), is therefore binding.

Finally, while plaintiff offers no argument in opposition, the undersigned determines that the settlement agreement that Messrs. Eason and Van Leunen negotiated with defendant's counsel contained all of the elements of a contract as required in Missouri, and that defendant has established the existence of same by clear, convincing, and satisfactory evidence. Luhr Bros., Inc., 288 S.W.3d at 783; Vulgamott, 154 S.W.3d at 388.

Therefore, for all of the foregoing reasons,

Defendant Wal-Mart Stores East, LP's Verified Motion To Enforce Settlement Or In The Alternative Motion To Dismiss (Docket No. 33) should be granted to the extent defendant seeks enforcement of the settlement agreement. To the extent that defendant alternatively seeks dismissal of the case, the motion should be denied, without prejudice. A separate Order is entered herewith.

_____
Frederick R. Buckles
UNITED STATES MAGISTRATE JUDGE

Dated this 29th day of March, 2010.